## CRIMINAL COURT OF BALTIMORE CITY.

Filed December 20, 1893.

STATE OF MARYLAND

VS.

JACOB G. ROHR.

HARLAN, C. J.—

The traverser in this case was indicted for a violation of the license law and was tried before Court without a jury. There is no dispute about the facts. Jacob G. Rohr, who is general manager for the Consumers' Meat Co., a corporation of the State of Pennsylvania, engaged in the sale of meat in Baltimore City, applied to the clerk of the Court of Common Pleas for a trader's license, and made affidavit that the amount of the stock of meat generally kept on hand by the concern in which he is engaged at the principal season of sale is $4,000. A license fee of $22 was thereupon paid. Rohr stated to the clerk that the business of his concern was carried on at fifteen different stores in Baltimore City, the $4,000, which he had specified being the value of the entire stock in all of the stores, and asked to have each of the stores specified in the license. This the clerk declined to do and specified but one, to wit: No. 608 Forrest street. Rohr is now indicted for trading without a license at one of the other stores, and the question of law involved in the case is whether where the same person or corporation is engaged in conducting business as a trader at several stores a license fee must be paid for each store, based upon the amount of stock therein generally kept on hand at the principal season of sale, or whether a single license fee based upon the aggregate amount of stock so kept in all

of said stores is sufficient. The answer to this question depends upon the provisions of the Traders' License Law (Code Pub. Gen. Laws, Art. 56, Secs. 36, 54). A careful examination of the statute has convinced us that a single fee based upon the aggregate amount of the trader's stock, no matter in how many stores kept, is all that is required under the conditions stated. The statute nowhere requires the applicant for a license to state the place where the business is to be carried on, and nowhere requires the license when issued to show the place at which the business is to be conducted. It nowhere declares that the trader shall pay a license fee for the place at which he is to conduct business. It provides thus: "No person or corporation other than grower, maker or manufacturer, shall barter or sell, or otherwise dispose of or offer for sale, any goods, chattels, wares or merchandise within this State, without first obtaining a license" (Sec. 35). "When any person, body politic or corporate shall propose to sell or barter or dispose of or offer for sale anything mentioned in the preceeding section, except spirituous or fermented liquors, he shall apply to the clerk of the Circuit Court of the County in which he proposes to carry on such selling or bartering or disposing of such goods, wares, chattels or merchandise; or if he proposes to carry on such selling, &c., in the City of Baltimore, to the Clerk of the Court of Common Pleas for a license therefor; and a license to offer for sale, issued by the clerk * * * shall be good and sufficient a license to offer for sale in every part of the State; provided that such license shall not authorize the holder thereof to open or carry on any store or fixed place of business for such selling or offering for sale in any other City or County in which such license shall issue (Sec. 36). There is nothing here which limits the license to any one store *within the city or county* where the license is issued. The applicant is required to "state to the clerk on oath the amount of said applicant's stock of goods, ware and merchandise generally kept on hand by him or the concern in which he is engaged at the principal season of sale" (Sec. 37). "If it shall appear from the statement so made on oath that the amount of the applicant's stock in trade does not or will not exceed one thousand dollars. the sum of twelve dollars shall be de-

manded and received by said applicant before granting the license applied for" (Sec. 38). "If more than one thousand dollars and not more than fifteen hundred dollars, the sum of fifteen dollars (Sec. 39). "If more than fifteen hundred dollars and not more than twenty hundred dollars, the sum of eighteen dollars (Sec. 40), and so on, increasing the fee as the amount of stock increases up to $40,000, for more than which amount the sum of one hundred and fifty dollars is to be paid for the license (Secs. 41-49).

The policy of this legislation seems to be that a trader shall pay a license tax proportioned to the stock of goods which he employs in his business at the principal season of sale without any reference to the size or number of the stores, within the county or city, in which the business is conducted. The criterion of cost is the stock generally kept on hand in the business without regard to whether this stock be kept in one large store, perchance occupying a whole block, or be distributed among a number of smaller stores. That this is the true interpretation of the present license law is made clearer when we consider the prior legislation which it has superseded. Going back to 1827 we find it provided by the Act of 1827, Chapter 14, that "a license to sell or barter any goods, &c., shall be granted by the clerk * * * to any person * * * who shall apply therefor and pay to such clerk the sum of twelve dollars * * * which license shall authorize the person to whom the same has been granted to sell or barter any of said goods, wares, &c., *only at such house or other building or place as shall be therein particularly described.*"

At this time there was but one license fee, to-wit: twelve dollars, no matter how large the business to be transacted might be and this license gave permission to sell at the particular place for which it was issued and which was required to be mentioned therein. But when we come to the Act of 1858, Chapter 414, we find that for one license fee, covering all cases we have substituted, the graduated fees which now appear in the Code based upon the applicants stock of goods, wares and merchandise generally kept on hand and the omission of any requirement that the license shall describe the place at which the business is to be conducted.

The conclusion, I think, is plain that the legislature meant to substitute for a license costing twelve dollars for a particular place, without reference to the amount of business that would be there done, a license costing a sum varying with the amount of the trader's business, without reference to the place or places at which the business should be done. This construction of the statute gains additional force from the fact that in dealing with "Brokers" the same article of the Code, Article 56, provides expressly that "No individual, copartnership or firm, legal representative or assignee shall use or occupy at the same time more than one office or place of business for the transaction of his or their business." (Sec. 23.)

With this express prohibition as to brokers and the omission in the face of the previous legislation, of any such limitation with reference to traders is it not manifest that the legislature did not intend to confine the operations of a trader's license to any one place of business? I am of opinion that the traverser is entitled to be acquitted. The verdict of the Court is not guilty, and judgment will be entered accordingly.